1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT
9              CENTRAL DISTRICT OF CALIFORNIA
10

11  SHARI L.,[1]                          Case No. 2:24-cv-09764-JC
12              Plaintiff,
13        v.                              MEMORANDUM OPINION
14  FRANK BISIGNANO, Commissioner
    of Social Security Administration,
15
16              Defendant.
17
18

19  **I.    SUMMARY**

20        On November 13, 2024, Plaintiff Shari L. filed a Complaint seeking review

21  of the Commissioner of Social Security's denial of Plaintiff's applications for

22  benefits.  The parties have consented to proceed before the undersigned United

23  States Magistrate Judge.

24        This matter is before the Court on the parties' cross-briefs (respectively,

25  "Plaintiff's Brief," "Defendant's Brief," and "Plaintiff's Reply") which the Court

26

27        [1]Plaintiff's name is partially redacted to protect Plaintiff's privacy in compliance with
28  Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court
    Administration and Case Management of the Judicial Conference of the United States.

has taken under submission without oral argument.  See November 13, 2024 Case Management Order ¶ 4.

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED.  The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.

## II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On or after May 24, 2022, Plaintiff, an underwriter with a significant work history, filed applications for Disability Insurance Benefits and Supplemental Security Income alleging disability beginning on August 1, 2021, due to chronic pain, multilevel degenerative disc disease, scoliosis, bulging discs, and sciatica. (Administrative Record ("AR") 312-46, 351-53, 372, 398).  In a letter dated April 27, 2024, Plaintiff also reported that her pain and related limitations had "affected [her] mental state in a negative way."  (AR 513-15).

The Administration denied Plaintiff's claims initially on September 16, 2022, and on reconsideration on April 25, 2023.  See AR 59-136 (finding Plaintiff would have at most mild mental limitations so her mental impairment(s) were non-severe, and that she could perform a range of light work with occasional postural limitations apart from no climbing ladders, ropes, or scaffolds, and hazard restrictions).

An ALJ examined the medical record and, on December 7, 2023, heard testimony from Plaintiff and a vocational expert.  (AR 35-58).  On February 22, 2024, the ALJ determined Plaintiff was not disabled since the alleged onset date. (AR 17-27).  The ALJ found in relevant part:  (1) Plaintiff had not engaged in substantial gainful activity since the alleged onset date (AR 20 (classifying earnings from the fourth quarter of 2021 through the first quarter of 2023, as from an unsuccessful work attempt or not from work-related activities)); (2) Plaintiff had severe lumbosacral radiculopathy, lumbar degenerative disc disease, and lumbar spine spondylosis (AR 20-22 (finding non-severe Plaintiff's mental

impairments)); (3) Plaintiff had a residual functional capacity ("RFC")[2] for a range of light work (20 C.F.R. §§ 404.1567(b), 416.967(b)) with occasional postural activities (i.e., climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling), no climbing of ladders, ropes or scaffolds, and no concentrated exposure to workplace hazards) (AR 21, 23-26 (adopting RFC consistent with:  (a) the state agency physician opinions, which the ALJ found "persuasive"; and (b) the consultative examiner opinions, which the ALJ also found "persuasive," who found Plaintiff would have no mental limitations and could perform a range of light work; declining to adopt opinions from Chiropractor Alan Rosenthal and Dr. Zahra Sherazi suggesting limitations which would preclude all work); and (4) with this RFC, Plaintiff would be able to perform her past relevant work as an underwriter as actually and generally performed (AR 26 (adopting vocational expert testimony at AR 53-57)).

On September 18, 2024, the Appeals Council denied Plaintiff's application for review.  (AR 1-3).

## III.    APPLICABLE LEGAL STANDARDS

### A.    Administrative Evaluation of Disability Claims

To qualify for disability benefits, a claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted), superseded by regulation on other grounds as stated in Sisk v. Saul, 820 Fed. App'x 604, 606 (9th Cir. 2020); 20 C.F.R. §§ 404.1505(a), 416.905(a).  To be considered disabled, a claimant must have an impairment of such severity that she is incapable of performing work the claimant previously performed ("past relevant work") as well

---

[2]A RFC is what a claimant can still do despite existing exertional and nonexertional limitations.  See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

1    as any other "work which exists in the national economy." Tackett v. Apfel, 180
2    F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)).

3        To assess whether a claimant is disabled, an ALJ is required to use the five-
4    step sequential evaluation process set forth in Social Security regulations. See
5    Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006)
6    (describing five-step sequential evaluation process) (citing 20 C.F.R. §§ 404.1520,
7    416.920). The claimant has the burden of proof at steps one through four – i.e.,
8    determination of whether the claimant was engaging in substantial gainful activity
9    (step 1), has a sufficiently severe impairment (step 2), has an impairment or
10   combination of impairments that meets or medically equals one of the conditions
11   listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings") (step 3), and
12   retains the residual functional capacity to perform past relevant work (step 4).
13   Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). The
14   Commissioner has the burden of proof at step five – i.e., establishing that the
     claimant could perform other work in the national economy. Id.

15       **B.    Federal Court Review of Social Security Disability Decisions**
16       A federal court may set aside a denial of benefits only when the
17   Commissioner's "final decision" was "based on legal error or not supported by
18   substantial evidence in the record." 42 U.S.C. § 405(g); Trevizo v. Berryhill, 871
19   F.3d 664, 674 (9th Cir. 2017) (citation and quotation marks omitted). The
20   standard of review in disability cases is "highly deferential." Rounds v. Comm'r
21   of Soc. Sec. Admin., 807 F.3d 996, 1002 (9th Cir. 2015) (citation and quotation
22   marks omitted). Thus, an ALJ's decision must be upheld if the evidence could
23   reasonably support either affirming or reversing the decision. Trevizo, 871 F.3d at
24   674-75 (citations omitted). Even when an ALJ's decision contains error, it must
25   be affirmed if the error was harmless. See Treichler v. Comm'r of Soc. Sec.
26   Admin., 775 F.3d 1090, 1099 (9th Cir. 2014) (ALJ error harmless if
27   (1) inconsequential to the ultimate nondisability determination; or (2) ALJ's path
28   ///

4

may reasonably be discerned despite the error) (citation and quotation marks omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Trevizo, 871 F.3d at 674 (defining "substantial evidence" as "more than a mere scintilla, but less than a preponderance") (citation and quotation marks omitted).  When determining whether substantial evidence supports an ALJ's finding, a court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion[.]" Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (citation and quotation marks omitted).

Federal courts review only the reasoning the ALJ provided, and may not affirm the ALJ's decision "on a ground upon which [the ALJ] did not rely." Trevizo, 871 F.3d at 675 (citations omitted).  Hence, while an ALJ's decision need not be drafted with "ideal clarity," it must, at a minimum, set forth the ALJ's reasoning "in a way that allows for meaningful review." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citing Treichler, 775 F.3d at 1099).

A reviewing court may not conclude that an error was harmless based on independent findings gleaned from the administrative record. Brown-Hunter, 806 F.3d at 492 (citations omitted).  When a reviewing court cannot confidently conclude that an error was harmless, a remand for additional investigation or explanation is generally appropriate. See Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) (citations omitted).

**IV.  DISCUSSION**

Plaintiff raises two issues.  Plaintiff contends that the ALJ erred in evaluating Dr. Rosenthal's and Dr. Sherazi's opinions suggesting greater limitations than the ALJ found to exist by failing to state specifically how persuasive the ALJ found these opinions.  Plaintiff asserts that the ALJ's alleged errors "cause a concomitant defective analysis" of Plaintiff's statements regarding her limitations.  (Plaintiff's Brief at 1, 5-15; Plaintiff's Reply at 2-3).  Plaintiff also

contends that the ALJ failed adequately to explain why the RFC included no mental limitations.  (Plaintiff's Brief at 16-19; Plaintiff's Reply at 3-7).  For the reasons explained below, Plaintiff has not shown that reversal or remand is warranted.

> **A.     Any Error in Considering Dr. Rosenthal's and Dr. Sherazi's Opinions Is Harmless; Substantial Evidence Supports the ALJ's RFC Assessment**

For claims filed after March 27, 2017 (such as Plaintiff's claims), new regulations govern the evaluation of medical opinion evidence.  Under these regulations, ALJs no longer "weigh" medical opinions; rather, ALJs "evaluate the[ir] persuasiveness" based on five "factors":  (1) supportability; (2) consistency; (3) relationship with the claimant (including the length of treatment, frequency of examinations, purpose of treatment, extent of treatment, and whether the medical source examined the claimant); (4) the medical source's specialty; and (5) "other" factors that tend to support or contradict an opinion.  See 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

The two most important factors in determining the persuasiveness of medical opinions are supportability and consistency with the evidence.  See 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  ALJs must "explain" how they considered the factors of supportability and consistency, but need not explain how they considered any other factor.  See 20 C.F.R. §§ 404.1520c(b), 416.920c(b).

> Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant. . . objective medical evidence."  Consistency means the extent to which a medical opinion is "consistent. . . with the evidence from other medical sources and nonmedical sources in the claim."

Woods v. Kijakazi, 32 F.4th 785, 791-92 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(c)(1), (2)).  "[U]nder the new regulations, an ALJ cannot reject an

///

examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."  Id. at 792.[3]

### 1.     Dr. Rosenthal's and Dr. Sherazi's Opinions and Available Treatment Records

Dr. Rosenthal and Dr. Sherazi each provided a "Physical Capacities Evaluation" opining almost identical abilities and limitations for Plaintiff.  See AR 1135-37 (Dr. Rosenthal's November 2, 2023 form); AR 1141-43 (Dr. Sherazi's November 8, 2023 form).  Both doctors indicated that Plaintiff:  (1) could lift up to five pounds; (2) could sit and stand/walk less than one hour each in an eight-hour workday; (3) would need to alternate between sitting and standing at will throughout the day; (4) could not use her hands "adequately" to grasp or for fine manipulation, and could not do repetitive motion tasks with one or both her hands; (5) could occasionally climb, balance, and reach above shoulder level, but could never stoop, kneel, or crouch; and (6) could not work at unprotected heights or around moving machinery or drive, and must avoid severe temperature changes/ humidity and exposure to dust, fumes, and gases.  (AR 1135-36, 1141-42).  Dr. Rosenthal indicated that Plaintiff could use both feet for repetitive movements, but could never crawl.  (AR 1135-36).  Whereas, Dr. Sherazi indicated that Plaintiff could use her left foot for repetitive movements, without indicating whether Plaintiff could use her right foot, and did not indicate whether Plaintiff would have a crawling limitation.  (AR 1141-42).[4]

---

[3]The new regulations also eliminated the term "treating source," as well as the rule previously known as the treating source rule or treating physician rule, which formerly required special deference to the opinions of treating sources.  See 20 C.F.R. §§ 404.1520c, 416.920c; Woods, 32 F.4th at 792 ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."); see also Cross v. O'Malley, 89 F.4th 1211, 1213-14 (9th Cir. 2024) (discussing new regulations).

[4]Dr. Rosenthal provided a "Physical Ability Assessment" dated April 19, 2023, noting slightly different limitations and abilities.  He checked that, according to Plaintiff's report and his observation, Plaintiff:  (1) could occasionally lift and carry 10 pounds, push and pull 10 pounds;

(continued...)

7

Both doctors also indicated that Plaintiff had fatigue and pain which would prevent her from working at even a sedentary job. (AR 1136-37, 1142-43). Dr. Rosenthal described the medical bases for Plaintiff's pain as "bulging discs shown on MRI scans, also degenerative joint disease, stenosis and scoliosis, also Dupuytren's contracture bilaterally." (AR 1137). Dr. Sherazi described the medical bases for Plaintiff's pain as a "MRI scan showed bulging disc, degenerative disease, foraminal stenosis L5-S1." (AR 1143).

The record contains some treatment notes from both of these doctors. Dr. Rosenthal provided treatment summaries and treatment notes for the period from May 2022 to November 2023, which indicated that Plaintiff had attended about 45 chiropractic sessions for low back pain ranging from 3-4/10 to 9/10, with noted improvement from treatment in reducing the reported pain. (AR 788-96, 1171-73, 1252-55). Plaintiff had one additional treatment, just after Dr. Rosenthal completed the Physical Capacities form, where her pain was 2-3/10. (AR 1254).

Dr. Sherazi, who worked at Facey Medical Foundation, began seeing Plaintiff in September 2022, for hypertension, lumbar radiculopathy, back pain, and Plaintiff notedly then was on temporary disability pending a neurosurgery appointment for possible surgery. (AR 1058-61, 1112-14, 1204-07). Plaintiff's examination was within normal limits including normal musculoskeletal range of motion. (AR 1206). Dr. Sherazi extended Plaintiff's disability for two months. (AR 1204).[5]

---

[4](...continued)
(2) could sit, stand, walk, reach below the waist, grasp with her hands, climb stairs or ladders, balance, stoop, kneel, crouch, and crawl zero hours a day; (3) could occasionally reach overhead and at desk level, use her hands for fine manipulation and grasping, and use her lower extremities for foot controls. (AR 830-31).

[5]Prior treatment notes from Facey Medical Foundation date back to February 2021, and reflect ongoing pain management treatment for lumbar spondylosis, myofascial pain, chronic pain syndrome, lumbar radiculopathy, scoliosis, and sacroiliitis, which included medial branch blocks, Gabapentin, epidural injections, lumbar radiofrequency ablation, Baclofen, Lyrica, Tramadol, physical therapy, and decompressive treatments – without complete pain relief – and
(continued...)

Plaintiff followed up with Dr. Sherazi in January 2023, requesting Tramadol for her pain and to extend her disability for three more months, which Dr. Sherazi approved. (AR 1054-57, 1104-07, 1196-1200). Examination findings again were with normal limits including normal musculoskeletal range of motion. (AR 1198-99). When Plaintiff returned for a shingles vaccine in February 2023, she reported no other concerns but was given Lidocaine patches. (AR 1051-54, 1095-98, 1192-95). Examination findings again were within normal limits including normal musculoskeletal range of motion. (AR 1194).

---

[5](...continued)
referrals to an orthopedic surgeon and a neurosurgeon. (AR 543-57, 563-98, 621-709, 727, 756, 1207-19, 1228-49).

A December 2021 lumbar spine MRI showed mild to moderate multilevel disc disease, moderate to severe multilevel foraminal stenosis, mild central canal and lateral recess stenosis from L2-L3 through L4-L5, and moderate dextro convexity. (AR 1236-37; see also AR 708-09 (October, 2019 lumbar spine MRI)). In January 2022, an orthopedic surgeon recommended surgery. (AR 525-29). Her examination at the time showed she had some difficulty heel walking on the right side, decreased lumbar spine range of motion, strength of 5/5 in all extremities except the Tibialis Anterior which was 4+/5, no tenderness or spasm, and negative straight leg raising. (AR 527-28).

In April 2022, Plaintiff had a neurology consultation where she complained of right side sciatic pain at up to 9/10, and reportedly had been scheduled for orthopedic surgery for the following week but Plaintiff was fearful and canceled the surgery. (AR 1213-14). She was referred for a nerve conduction study and to neurosurgery for a second opinion. (AR 1214). Her examination findings were within normal limits, including 5/5 strength in her extremities. (AR 1216). Later in April, she went to her internal medicine doctor for a disability letter for work for severe bilateral lumbar radiculopathy with pain and weakness in the lower extremities and difficulty sitting or standing more than 15 minutes, difficulty driving and ambulating, and several unsuccessful attempts at pain management. (AR 1210). She was referred to neurosurgery, notedly was unable to sit or stand for more than 20 minutes without significant pain, declined a trial of Cymbalta, and her disability was continued until she "is able to have surgery and rehabilitate." (AR 1210).

Plaintiff had her neurosurgical consultation in June 2022, and surgery was an option. (AR 719-22). Her examination at the time showed she had normal gait, 5/5 strength, lumbar scoliosis, severe tenderness to palpation of the right SI joint, right hip bursa, and positive straight leg raising on the right, but normal range of motion in all joints. (AR 721).

Plaintiff returned in April 2023, complaining of back pain and discomfort, weakness, and stiffness in her hands/palms, and requesting completion of disability forms for her history of chronic back pain from lumbar radiculopathy for which she was not interested in surgery. (AR 1046-50, 1080-84, 1188-91). Examination findings again were unchanged except for nodules and tenderness to palpation on both hands. (AR 1190-91). Dr. Sherazi filled out Plaintiff's disability form, continued her Tramadol and spinal cord compression therapy, and referred Plaintiff to a hand surgeon for Dupuytren's disease. (AR 1188).

Dr. Sherazi's last note is from a physical examination in November 2023 – the day she completed the Physical Capacities Evaluation form. (AR 1183-87). Plaintiff's "active problems" included a "disability examination," anxiety, lumbar radiculopathy, lumbar spondylosis, lumbar disc degeneration, and chronic continuous use of opioids (Tramadol). (AR 1185). Plaintiff notedly complained of back pain but was not depressed, nervous or anxious, and on examination had findings within normal limits including normal musculoskeletal range of motion, (AR 1185-86).

### 2.    The Other Opinion Evidence

Consultative examiner Dr. Jerry Chuang provided a "Complete Orthopedic Consultation" dated April 6, 2023. (AR 1034-38). Dr. Chuang reviewed medical records including the December 2021 lumbar spine MRI. (AR 1034). Plaintiff complained of low back pain going to both legs since 2006, with numbness and tingling, relieved by lying flat. (AR 1034). On examination, Plaintiff had a normal gait but difficulty with toe and heel walk, tenderness and weakness in her lumbar spine due to pain with limited range of motion and positive straight leg raising, and mild weakness of 4+/5 in the lower extremities. (AR 1035-37). Dr. Chuang assessed lumbosacral radiculopathy causing moderate weakness in the lower back and mild weakness in the bilateral lower extremities. (AR 1037). Dr. Chuang opined that Plaintiff would be capable of light work with occasional pushing, pulling, overhead reaching, bending, crouching, stooping, crawling,

walking on uneven terrain, climbing ladders, and working at unprotected heights.
(AR 1037-38).

Consultative examiner Dr. Minas Harutunian provided a "Mental
Evaluation by Psychologist" dated April 14, 2023. (AR 1145-48). Dr. Harutunian
reviewed no medical records. (AR 1145). Plaintiff complained that chronic pain
had "made [her] emotionally broken physically," and reported symptoms related to
being born with back issues that had gotten worse with age. (AR 1145). Although
Plaintiff had received psychiatric counseling and/or treatment, she was not
currently in treatment. (AR 1146). Plaintiff lived alone, managed her own money,
could drive, use a bus or an Uber, and go places by herself, but reportedly could
barely dress or bathe herself. (AR 1146). Mental status examination noted
findings within normal limits except Plaintiff reportedly was having whole body
pain, stood throughout the evaluation due to pain, appeared to be in pain and was
grimacing, was anxious, described her mood as, "I've been worse," was able to
register two out of three items at five minutes. (AR 1147). Dr. Harutunian
diagnosed anxiety disorder due to medical problems and opined that Plaintiff
would have no mental limitations or difficulties in performing work tasks. (AR
1147-48).

State agency physicians reviewed the record in September 2022 and April
2023, and opined that Plaintiff's mental impairments would cause at most mild
limitations and were not-severe, and agreed with Dr. Chuang that Plaintiff would
be limited to a range of light work with occasional postural activities, no climbing
of ladders, ropes or scaffolds, and no concentrated exposure to hazards. (AR 65-
136).

### 3.    The ALJ's Decision

In determining that Plaintiff had a RFC for a range of light work which
would permit Plaintiff to perform her past relevant work as an underwriter, the
ALJ considered and found persuasive the opinions from Dr. Chuang, Dr.
Harutunian, and the state agency physicians. (AR 21-22, 24-26). The ALJ also

considered Dr. Rosenthal's and Dr. Sherazi's functional assessments suggesting Plaintiff had limitations which would preclude Plaintiff from working, which the ALJ characterized as not providing an opinion on what Plaintiff could still do despite her impairments (where they actually did state what Plaintiff could still do, albeit what Plaintiff could do was greatly restricted).  (AR 25).  The ALJ did not state whether she found Dr. Rosenthal's or Dr. Sherazi's opinions persuasive, but did discuss their supportability and consistency as follows:

> They primarily summarized in the treatment notes the claimant's subjective complaints, diagnoses, and treatment, but he [sic] did not provide medically acceptable clinical or diagnostic findings to support the functional assessment.  These opinions are also inconsistent with the claimant's admitted activities of daily living, which have already been described above in this section.[6]  The Chiropractor [Dr.] Rosenthal conservatively treated the claimant with chiropractic care of spinal decompression, mechanical intersegmental traction, laser, ice and Thera gun treatments.

(AR 25-26).  The ALJ did not adopt the limits Dr. Rosenthal and Dr. Sherazi had found.  (AR 22-23).  The ALJ also rejected their assertions that Plaintiff was disabled as an issue that is reserved for the Commissioner.  (AR 25 (citing 20 C.F.R. §§ 404.1527(e), 416.927(e)).

### 4.    Analysis

The ALJ followed the new regulations in considering and finding persuasive the medical opinions from the consultative examiners and state agency physicians.  (20 C.F.R. §§ 404.1520c, 416.920c).  The opinions of Dr. Chuang, Dr. Harutunian, and the state agency physicians, which the ALJ found persuasive and

---

[6]Plaintiff had reported that she lived alone, could grocery shop and could lift and/or carry a purse and a bag of groceries 50-100 feet, vacuum, dust, wipe down counters, drive a car, take a bus or Uber, and go places by herself.  See AR 23-24 (discussing same; citing AR 387-89, 1146)).

had found limitations arguably consistent with those the ALJ assessed, furnish substantial evidence to support the ALJ's RFC assessment.  See 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (in determining a claimant's RFC, the Administration will consider medical source statements about what a claimant can still do, whether or not based on formal medical examinations).

The ALJ may not have thought she needed to follow the new regulations for Dr. Rosenthal's and Dr. Sherazi's opinions because the ALJ incorrectly characterized each as not providing an opinion on what Plaintiff could still do despite her impairments.  (AR 25; see also 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2) (defining a "medical opinion" as a statement about what a claimant can still do despite impairments)).  As noted above, the new regulations require ALJs to explain how they considered supportability and consistency as factors in determining the persuasiveness of medical opinions.  See 20 C.F.R. §§ 404.1520c(b), (c)(1)-(5), 416.920c(b), (c)(1)-(5).  While the ALJ did not use the word "persuasive" in discussing Dr. Rosenthal's and Dr. Sherazi's opinions, the ALJ did explain how she considered the supportability and consistency of these opinions in declining to adopt their limitations, and substantial evidence supports the ALJ's findings.

As the ALJ noted, Dr. Rosenthal's and Dr. Sherazi's opinions arguably were not supported by clinical or diagnostic findings.  As detailed above and as the ALJ discussed, while the record showed lumbar spine related diagnoses and MRIs, and several modes of pain treatment which did not alleviate Plaintiff's pain, Plaintiff's physical examinations were generally within normal limits.  See AR 24-25 (citing AR 529, 805, 814, 1047 (noting diagnoses); AR 517-18 (December 2021 lumbar spine MRI); AR 716, 719, 805, 814, 1047, 1259 (reports of various pain treatments and options); AR 527-28, 721, 807, 815-16, 839, 1049, 1186 (examination findings).  The ALJ also noted their opinions were inconsistent with Plaintiff's admitted activities including being able to shop for groceries, carry a ///

grocery bag and her purse, drive, ride a bus, take an Uber, and do some household chores.  (AR 23-25 (citing AR 387-89, 1146)).

It is reasonable to infer from the ALJ's reasoning that she found Dr. Rosenthal's and Dr. Sherazi's opinions unpersuasive, despite her not using the word "persuasive."  See Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989) (ALJ was not required to recite "magic words" to reject medical opinion; "As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion.").  It thus appears that any error from the ALJ's failure to use the word "persuasive" is harmless.  See, e.g., Bryan T. v. Dudek, 2025 WL 2588924, at *7 (N.D. Cal. Sept. 8, 2025) (finding harmless ALJ's failure to use the word "persuasive" in considering some of the medical opinions, where ALJ explained why she found those opinions were supported and consistent as required by the regulations); Fierro v. Comm'r of Soc. Sec., 2023 WL 6725135, at *2-3, 5 (E.D. Cal. Oct. 12, 2023) (finding ALJ adequately explained how persuasive he found doctor's opinion even if the ALJ did not use the term "persuasive"; it was clear from the ALJ's decision that the ALJ rejected the opinion as not persuasive,  and the reasons for rejecting the opinion were clear); Barbara K. v. Kijakazi, 2023 WL 6633855, at *12 (D. N.J. Oct. 11, 2023) (same); compare Jessica R. v. Acting Comm'r of Soc. Sec., 2024 WL 4449448, at *5 (W.D. Wash. Oct. 9, 2024) (finding reversible error where ALJ did not find medical opinion persuasive or unpersuasive; ALJ simply stated that there was partial support in the record for opinion without any references to facts or citations to the record – ALJ did not articulate what the opinion was or how it was supported by the record); Daylene S. v. Comm'r of Soc. Sec., 2023 WL 166890, at *3 & n.2 (W.D. Wash. Jan. 12, 2023) (instructing ALJ to use complete sentences and some form of the word "persuasive" in evaluating opinions on remand; the ALJ did not find opinions persuasive or unpersuasive, and while the context of the decision suggested the ALJ found the opinions at least somewhat persuasive, the sentence where such a finding would be made was incomplete).

The Court will uphold the ALJ's RFC assessment, and the ALJ's related findings regarding the medical opinion evidence, including Dr. Rosenthal's and Dr. Sherazi's opinions, as supported by substantial evidence and free from material legal error. Woods v. Kijakazi, 32 F.4th at 792. To the extent the record evidence is conflicting, the ALJ properly resolved the conflicts. See Treichler v. Comm'r, 775 F.3d at 1098 (court "leaves it to the ALJ" to resolve conflicts and ambiguities in the record). The Court must uphold the administrative decision when the evidence "is susceptible to more than one rational interpretation." Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995). The Court will uphold the ALJ's rational interpretation of the conflicting evidence in this case.

## B.    The ALJ Adequately Explained Why the RFC Assessment Did Not Include Any Mental Limitations

Plaintiff also contends that the ALJ's failed adequately to explain why the RFC included no mental limitations. Plaintiff suggests that the ALJ's discussion of the relevant medical opinions which was at step two of the analysis was not sufficiently detailed as a basis on which to find Plaintiff would have no mental limitations. (Plaintiff's Brief at 16-19; Plaintiff's Reply at 3-7).

Significantly, no medical source opined that Plaintiff would have any specific work restrictions from her mental impairments. As detailed above, Dr. Harutunian opined that Plaintiff would have no mental limitations or difficulties performing work tasks. (AR 1148). The state agency physicians found her impairments non-severe and would cause only none-to-mild limitations. (AR 66-67, 81-82, 103-04, 125-26).

The ALJ detailed Dr. Harutunian's opinion and the state agency physicians' opinions about Plaintiff's mental impairments at step two when the ALJ found Plaintiff's mental impairments non-severe because they would cause no more than a minimal limitation in Plaintiff's ability to do basic work activities. (AR 21-22). The ALJ found these opinions were persuasive. (AR 21). The ALJ stated that the RFC she assessed at step four reflected the degree of limitation she found for the

1 "paragraph B" criteria (i.e., none to mild limitations).  (AR 20-22).  At step four,

2 the ALJ also noted that she had considered all of Plaintiff's symptoms and medical

3 opinions in determining Plaintiff's RFC.  (AR 23).

4       The ALJ's decision properly considered the medical opinions about

5 Plaintiff's mental impairments under the applicable regulations.  The Court

6 discerns no error.  See Lewis v. Apfel, 236 F.3d 503, 513 (9th Cir. 2001) (while an

7 ALJ is required to discuss and evaluate evidence that supports his or her

8 conclusions, the ALJ is not required to do so under any specific heading); see also

9 Ozolins v. Saul, 849 Fed. App'x 682, 683 (9th Cir. 2021) ("Although the ALJ's

10 explanation might have been more robust, her lengthy evaluation of the evidence

11 elsewhere 'is an adequate statement of the foundations on which the ultimate

12 factual conclusions are based.'") (citation omitted); compare Kaufmann v.

13 Kijakazi, 32 F.4th 843, 851 (9th Cir. 2022) (district court "clearly erred" when it

14 failed to consider "all the pages of the ALJ's decision").  In formulating a RFC,

15 and in the consequent hypothetical questioning of a vocational expert based on

16 such capacity, an ALJ need not include all conceivable limitations that favorable

17 interpretation of the record might suggest to exist – only those limitations the ALJ

18 finds to exist.  See, e.g., Bayliss v. Barnhart, 427 F.3d 1211, 1217-18 (9th Cir.

19 2005); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); Magallanes v.

20 Bowen, 881 F.2d at 756-57.  In the present case, the ALJ was not required to

21 include in Plaintiff's RFC alleged mental limitations the ALJ found not to exist

22 that medical providers also did not find.  See id.

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

///

V.      **CONCLUSION**

For the foregoing reasons, the decision of the Commissioner of Social Security is AFFIRMED.  Plaintiff is not entitled to a remand based on the ALJ's consideration of the medical record and the resultant RFC determination.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  December 18, 2025



/s/
_____
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

17